<u>No. 23-8505</u>

**SCHEDULED FOR ORAL ARGUMENT** _____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

IN RE: JACK JORDAN

**RESPONDENT'S BRIEF
IN
PURPORTED APPEAL
IN
PURPORTED DISCIPLINARY PROCEEDING**

Jack Jordan
3102 Howell Street
North Kansas City, MO 64116
jack.jordan@emobilawyer.com
816-853-1142
*Respondent*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**<u>Parties and Amici:</u>**

U.S. Court of Appeals for the District of Columbia Circuit

Jack Jordan, Respondent

**<u>Rulings Under Review</u>**:

This Court issued two orders in this case. The Order dated April 23, 2023 implied that it was based on the same justification as this Court's Show Cause Order dated February 10, 2023, in which this Court implied it had the power to disbar Respondent based on either (**1**) the mere existence of an Order of the Kansas Supreme Court or (**2**) the mere content of such Kansas order.

**<u>Related Cases</u>**:

*In the Matter of Jack R. T. Jordan*, Kansas Supreme Court, Case No. 124,956

*Jack Jordan v. U.S. Dept. of Justice*, D.C. Cir. No. 22-5289

*Jack Jordan v. U.S. Dept. of Labor*, D.C. Cir. No. 18-5128

ii

# TABLE OF CONTENTS

ABSENCE OF JURISDICTION ........................................................1

FACTUAL BACKGROUND ...........................................................3

SUMMARY OF ARGUMENT .........................................................9

ARGUMENT .................................................................................9

I.    Federal Courts Cannot Leverage Kansas Judges' Clear Violations of Kansas Statutes and the Kansas and U.S. Constitutions. ..............................................10

II.   This Court Must Afford Jordan the Requested Hearing; Judges' Hearsay Is Not Admissible Evidence Such Hearsay Is True. ....................................................12

III.  Any Action Against Jordan Based on Judges' Hearsay and Conduct Clearly Would Contravene Controlling Precedent. ........................................................16

IV.   This Court May and Must Adjudicate Only the Actual Case, Not Any Fictitious Appeal...........................................................21

V.    Each Court Must (But None Did or Can) Prove All Material Facts by Clear and Convincing Evidence...........................................................26

VI.   The Constitution Was Designed to Counter Officials' (*e.g.*, this Court's and Kansas's Judges') Lust for Illegitimate Power. ..................................................32

VII.    Any Action Against Jordan for Exposing and Opposing Judges' Lies and Crimes Was and Would Be Obscenely Unconstitutional..................................41

VIII.   Freedom of Expression Is *from* Judges' and Legislators' Historical Oppression and Repression. ..............................................45

IX.   First Amendment Freedoms Exist to Protect People (including Lawyers) from Abusive Officials (including Judges). ...............................................49

CONCLUSION ...........................................................................63

CERTIFICATE OF COMPLIANCE......................................................63

# TABLE OF AUTHORITIES

### Cases

*Addington v. Texas*,
   441 U.S. 418 (1979) ................................................................. 27, 28

*Ala. Legislative Black Caucus v. Alabama*,
   575 U.S. 254 (2015) ...................................................................... 23

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................... 27

*Bailey v. Alabama*,
   219 U.S. 219 (1911) ...................................................................... 22

*Beauharnais v. Illinois*,
   343 U.S. 250 (1952) ...................................................................... 62

*California v. Green*,
   399 U.S. 149 (1970) ...................................................................... 16

*Cantwell v. Connecticut*,
   310 U.S. 296 (1940) ...................................................................... 39

*Cohen v. Hurley*,
   366 U.S. 117 (1961) ...................................................................... 24

*Connick v. Myers*,
   461 U.S. 138 (1983) ...................................................................... 38

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ................................................................. 49, 50

*Ex Parte Wall*,
   107 U.S. 265 (1883) ...................................................................... 17

*Garrison v. Louisiana*,
   379 U.S. 64 (1964) ................................................................... 38, 40

*Gentile v. State Bar of Nev.*,
501 U.S. 1030 (1991) ..................................................................... 41, 42

*Gibson v. Mississippi*,
162 U.S. 565 (1896) ............................................................................. 23

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) .............................................................................. 2

*Hill v. Colorado*,
530 U.S. 703 (2000) ............................................................................. 37

*Iannaccone v. Law*,
142 F.3d 553 (2d Cir. 1998) ........................................................ 54, 55

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ............................................................................. 20

*In re Jordan*,
518 P.3d 1203 (Kan. 2022) ........................................................... 5, 6, 7

*In re Oliver*,
333 U.S. 257 (1948) ............................................................................. 42

*In re Ruffalo*,
390 U.S. 544 (1968) ............................................................................. 16

*Konigsberg v. State Bar of Cal.*,
353 U.S. 252 (1957) ............................................................................. 24

*Konigsberg v. State Bar of Cal.*,
366 U.S. 36 (1961) ............................................................................... 29

*Landmark Commc'ns, Inc. v. Virginia*,
435 U.S. 829 (1978) ............................................................................. 42

*Legal Services Corp. v. Velazquez*,
531 U.S. 533 (2001) ............................................................................. 25

*Lovell v. Griffin*,
303 U.S. 444 (1938) ............................................................................. 37

v

*Lowe v. SEC*,
    472 U.S. 181 (1985) .......................................................... 37

*Mackay v. Easton*,
    86 U.S. 619 (1873) .......................................................... 13

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ...................................... 21, 22

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ............................................................ 40

*Mills v. Alabama*,
    384 U.S. 214 (1966) ........................................................ 37

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    142 S.Ct. 2111 (2022) ........................................ 28, 29, 49, 50

*NAACP v. Button*,
    371 U.S. 415 (1963) .................................................... 44, 45

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ...........................22, 27, 39, 43, 44, 59-63

*Patterson v. Colorado*,
    205 U.S. 454 (1907) ........................................................ 47

*Pickering v. Board of Ed.*,
    391 U.S. 563 (1968) ........................................................ 40

*Quercia v. United States*,
    289 U.S. 466 (1933) ........................................................ 14

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .................................................... 30, 31

*Reilly v. Pinkus*,
    338 U.S. 269 (1949) ........................................................ 16

*Republican Party v. White*,
    536 U.S. 765 (2002) ........................................................ 30

vi

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966) ........................................................... 39

*Santosky v. Kramer*,
    455 U.S. 745 (1982) ......................................................... 28

*Selling v. Radford*,
    243 U.S. 46 (1917) ................................................ 17, 18, 19

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966) ......................................................... 41

*Snyder v. Phelps*,
    562 U.S. 443 (2011) .................................................... 25, 38

*Speiser v. Randall*,
    357 U.S. 513 (1958) .................................................... 31, 32

*Spevack v. Klein*,
    385 U.S. 511 (1967) .................................................... 23, 24

*Texas v. Johnson*,
    491 U.S. 397 (1989) ......................................................... 38

*Theard v. United States*,
    354 U.S. 278 (1957) ......................................................... 17

*Thornhill v. Alabama*,
    310 U.S. 88 (1940) ............................................... 25, 41, 56

*United States v. Alston-Graves*,
    435 F.3d 331 (D.C. Cir. 2006) ........................................... 2

*United States v. Classic*,
    313 U.S. 299 (1941) ......................................................... 20

*United States v. Gallo*,
    543 F.2d 361 (D.C. Cir. 1976) ....................................... 2, 3

*United States v. Playboy Entertainment Group, Inc.*,
    529 U. S. 803 (2000) ........................................................ 29

*United States v. Price*,
  383 U.S. 787 (1966) ................................................................... 19

*United States v. Vaello-Madero*,
  142 S. Ct. 1539 (2022) ............................................................... 23

*United States v. Will*,
  449 U.S. 200 (1980) ................................................................... 21

*Whitney v. California*,
  274 U.S. 357 (1927) ............................................................... 61, 62

*Wood v. Georgia*,
  370 U.S. 375 (1962) ............................................................... 26, 41

## Constitutions and Statutes

Kan. Const. Art. 2 ....................................................................... 10

Kan. Const. B. of R. § 2 ............................................................... 11

U.S. Const. Amend. I ..................................................12, 35, 36, 48

U.S. Const. Amend. V ........................... 10, 12, 17, 21, 35, 63

U.S. Const. Amend. VI ...............................................................63

U.S. Const. Amend. X ...................................................... 12, 21, 35

U.S. Const. Amend. XIV .............................................................. 10

U.S. Const. Art. III .....................................................................21, 35

U.S. Const. Art. IV ................................................................ 10, 59

U.S. Const. Art. VI .....................................................................21, 35

U.S. Const. Preamble ............................................................... 34, 58

5 U.S.C. § 3331 .......................................................................... 36

18 U.S.C. § 241 ........................................................................4, 19, 27

18 U.S.C. § 242 ........................................................................4, 19, 27

18 U.S.C. § 371 ........................................................................ 4, 27

18 U.S.C. § 401 ........................................................................27

18 U.S.C. § 1001 ........................................................................4, 8, 20

18 U.S.C. §§ 1341, 1343, 1346, 1349 ........................................................4

18 U.S.C. § 1512 ........................................................................4, 20

18 U.S.C. § 1519 ........................................................................4, 8

28 U.S.C. § 453 ........................................................................ 36

28 U.S.C. § 2071 ........................................................................ 27

28 U.S.C. § 2072 ........................................................................ 27

28 U.S.C. § 2074 ........................................................................ 13

Kan. Stat. Ann. 60-243 ........................................................................ 11

Kan. Stat. Ann. 60-401 ........................................................................ 11

Kan. Stat. Ann. 60-419 ........................................................................ 12

Kan. Stat. Ann. 60-420 ........................................................................ 12

Kan. Stat. Ann. 60-460 ........................................................................ 9, 11

**Rules**

D.C. Cir. Rule 28 ........................................................................ 3

FED.R.APP.P. 1 ........................................................................ 12

FED.R.APP.P. 46 ........................................................................ 12

FED.R.CRIM.PROC. 16 and 42 ........................................................... 7-8

FED.R.EVID. 101, 1101 ...................................................................... 13

FED.R.EVID. 201 ................................................................................. 14

FED.R.EVID. 401 ................................................................................. 13

FED.R.EVID. 602 ................................................................................. 15

FED.R.EVID. 603 ................................................................................. 15

FED.R.EVID. 605 ................................................................................. 14

FED.R.EVID. 614 ................................................................................. 15

FED.R.EVID. 802 ........................................................................... 14, 15

FED.R.EVID. 803 ................................................................................. 15

FED.R.EVID. 806 ................................................................................. 15

FED.R.EVID. 1002 ............................................................................... 14

### Other Authorities

1 Annals of Cong. 434 (1789) (James Madison). ................................... 56

41 Cong. Rec. S23-24 (Dec. 4, 1906), 59th Cong., 2d Sess. (President
    Theodore Roosevelt Annual Message to Congress (Dec. 3, 1906) quoting
    Hon. William Howard Taft (6th Cir.), *Recent Criticism of the Federal
    Judiciary*, Address to American Bar Association Annual Meeting (1895) .......43

Address to the Inhabitants of Quebec, First Continental Congress
    (Oct. 26, 1774) ................................................................................. 56

Benjamin Franklin, Silence Dogood No. 8,
    The New-England Courant (July 9, 1722) ................................... 50-51

Bensen Bobrick, *Angel in the Whirlwind: The Triumph of the American Revolution*
    (1997) ...............................................................................................54

x

*Cato's Letters* No. 15 (Feb. 4, 1721) (Thomas Gordon) .................................. 50-55

David McCullough, *John Adams* (2001) .................................... 18, 32-33

Declaration of Independence (1776)........................................................ 48, 57-58

Declaration of Rights and Grievances (Oct. 14, 1774).................................... 56-57

Federalist No. 51 (James Madison) ........................................................ 33

Federalist No. 78 (Alexander Hamilton) ........................................ 34, 48

Hon. William Howard Taft (6th Cir.), *Recent Criticism of the Federal Judiciary*, Address to American Bar Association Annual Meeting (1895)........................43

Jacob Mchangma, *Free Speech:  A History from Socrates to Social Media* (2022) .................................................................50, 55

Letter Thomas Jefferson to Edward Carrington (Jan. 16, 1787) ............................32

Report of 1800 on the Virginia Resolutions of 1798 (James Madison) ..... 59-60, 63

Sedition Act of 1798 .................................................................. 59, 60, 62

Sir Edward Coke, Report of *De Libellis Famosis* (1606)...................................... 45

Stephen D. Solomon, *Revolutionary Dissent:  How the Founding Generation Created the Freedom of Speech* (2016) ..................................... 45-46, 48, 51-55

*Trial of John Peter Zenger*, 17 Howell's St. Tr. 675 (1735) ............................................. 44, 52-53

Virginia Declaration of Rights (June 12, 1776)................................................ 55-56

William Blackstone, *Commentaries on the Laws of England* (1765) .............. 45-46

xi

# GLOSSARY

| | |
|---|---|
| DOL | U.S. Department of Labor |
| DOJ | U.S. Department of Justice |
| Federal Judges | Judge Rudolph Contreras (D.D.C.)<br>Judge Ortrie Smith (Mo. W.D.)<br>Chief Judge Beth Phillips (Mo. W.D.)<br>Judge Raymond Gruender (8th Cir.)<br>Judge David Stras (8th Cir.)<br>Judge Duane Benton (8th Cir.) |
| Huber's email | email from Robert Huber, July 31, 2013 at 8:21 a.m. (*see* p. 2, below; App. 1-2 (unredacted); App. 58-59 (redacted) |
| Panel | Judges Millett, Wilkins and Katsas (D.C. Cir.) |
| Powers' email | email from Darin Powers, July 30, 2013 (*see* p. 2, below, and App. 2-4, App. 59-61 (redacted) |
| SCO | Order to show cause, *In re Jack Jordan*, D.C. Cir. Feb. 10, 2023 |

xii

Respondent, Jack Jordan ("**Jordan**") respectfully opposes the Panel Order 4/24/2023.

## <u>ABSENCE OF JURISDICTION</u>

Judges Millett, Wilkins and Katsas ("**Panel**") repeatedly *knowingly* violated Jordan's rights secured by clear and clearly-controlling federal law and the Constitution. They did so to help Judge Contreras and U.S. Department of Justice ("**DOJ**") and U.S. Department of Labor ("**DOL**") attorneys (and Littler Mendelson, P.C.) conceal evidence that they lied about Powers' email to fraudulently procure two summary judgments and two summary affirmances.

On April 11, the Panel did so directly (denying Jordan's motion) and indirectly (*knowingly* illegally denying Jordan an appeal). *See* Summary Affirmance 4/11/2023 (No. 22-5289). They emphasized they did so "[u]pon consideration of" all the parties' filings, including Jordan's "motion to supplement the record," which they "denied" specifically because Jordan purportedly "has not shown he is entitled to the requested relief." *Id*. Such "consideration" proved the Panel *knew* DOJ attorneys and Judge Contreras lied (and criminally concealed evidence) to pretend to justify two fraudulent summary judgments and two fraudulent summary affirmances.

1

Jordan's *unopposed* motion (App. 5-38) asked the Panel to merely order "the District Court" to supplement the record with "a copy of Powers' email showing" only "*non-commercial* words" in "any privilege notation or any request for 'advice' 'input' or 'review.'" App. 10.  To avoid considering concise evidence proving Judge Contreras and DOJ attorneys lied (including *repeatedly to this Court*), the Panel helped conceal dispositive evidence of profoundly material facts. The Panel clearly were "willfully blind," *i.e.*, they (*repeatedly*) took "deliberate actions to avoid confirming a high probability of wrongdoing."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  *Accord United States v. Alston-Graves*, 435 F.3d 331, 339 (D.C. Cir. 2006) quoting *United States v. Gallo*, 543 F.2d 361, 369, n. 6 (D.C. Cir. 1976).

For many months, DOL and DOJ and attorneys (and Judge Contreras) told the same stories about Huber's email as about Powers' email to pretend to justify the first fraudulent summary judgment and summary affirmance.  Virtually (if not actually) every story they ever told about Huber's email was a lie.  *See* **Powers' email** (App. 2-4 (redacted)) and the reply email on July 31, 2013 at 8:21 a.m. ("**Huber's email**") (App. 1-2 (unredacted); App. 58-59 (redacted)).  *See also* App. 47-80 (additional D.D.C. and D.C. Cir. filings quoted in Jordan's motion).

2

Within two weeks after having denied Jordan's motion and denied Jordan his appeal, the Panel again indirectly helped conceal evidence of the same and related material facts, specifically, to help *disbar* Jordan.  They "discharged" an obviously-illegal "order to show cause" ("**SCO**") but illegally (criminally) "denied" Jordan's "request" for "an evidentiary hearing" while criminally usurping the power to disbar Jordan (without any hearing) by illegally ordering Jordan to defend himself in a "brief" and "before a merits panel" in sham "oral argument" in a sham *appeal*.  Order 4/24/2023 citing D.C. Cir. Rule 28(e).

## FACTUAL BACKGROUND

The Order frivolously implied the same justification for *disbarment* as the SCO, *i.e*., *somebody's* (likely not a judge's) "consideration" of a facially frivolous and fraudulent "order" by anonymous *Kansas* judges (disbarring Jordan *expressly* and *solely* for written statements in *federal* court filings exposing and opposing *federal* judges and *federal* attorneys committing *federal* offenses to conceal the *same evidence* as was at issue in Jordan's motion, above).  SCO 2/10/2023.

Despite years of litigation pertaining to such federal offenses—including two appeals in this Court (both resulting in fraudulent affirmances of fraudulent judgments) and two fraudulent decisions by Judges Smith and Phillips (Mo. W.D.)

3

fining Jordan for purported criminal contempt (which was the basis for Kansas's disbarment)—*nobody* ever even asserted (much less attempted to prove) any *fact* that could establish *any* Jordan statement was *false* about any judge or attorney lying about or committing crimes to conceal evidence of the phrases (purportedly) in Powers' email at issue in Jordan's motion, above.

In written court filings with this and other courts, Jordan stated that federal judges and attorneys lied and committed crimes in 18 U.S.C. §§ 241, 242, 371, 1001, 1512(b), 1341, 1343, 1346, 1349 or 1519.  All Jordan's statements remain undisputed.  No one ever even contended that any such statement was factually false.  No one ever asserted (or identified any evidence of) any fact that might establish falsity.  No one ever contended that any judge or attorney did not lie or commit any crime exactly as Jordan stated.  Yet, courts fined and disbarred Jordan *solely* because of such statements.  The SCO, the Panel's order and Kansas's order are excellent examples of such egregiously unconstitutional conduct.

Kansas judges disbarred Jordan *expressly* and *solely* for the foregoing speech/petitions.  "Any discipline imposed" by Kansas was "premised on" Jordan's "assertion" of "factual issues while litigating his FOIA cases in federal court" before Judges Contreras, Smith and Phillips and Eighth Circuit judges

4

regarding the lies and crimes of such judges (the "**Federal Judges**"). *In re Jordan*, 518 P.3d 1203 (Kan. 2022), slip. op. at 63. Kansas judges and attorneys identified the particular Jordan speech/petitions that they thought were easiest to attack. *See id*. at 5-19, 21-27.

Kansas judges knew that any "misconduct must be established by *clear and convincing evidence*," *i.e.*, "evidence" that "causes" judges "to *believe* it is *highly probable* that" actual "*facts*" that actually were "*asserted* are *true*." *Id*. at 60-61 (emphasis added) (citing Kansas decisions). So Kansas judges knew Kansas was required, first, to actually *assert* actual *facts*, and, second, to *prove* each *fact* was *true* (with clear and convincing evidence) to prove *how* Jordan's speech/petitions violated any rule of conduct.

Kansas judges and attorneys failed to do *any* of the above. Instead, they merely asserted vague, conclusory contentions, invoked illegal presumptions and asserted and reiterated falsehoods and lies. Many of the conclusory contentions the Kansas judges invoked consisted of hearsay by Kansas attorneys or Federal Judges, which was inadmissible (and not actually admitted) in Kansas.

*Kansas* attorneys and judges pretended to apply *federal* law and merely *contended* that "the record" somehow "shows" that Jordan "filed motions with

5

frivolous assertions of dishonest and criminal conduct" (under federal law) by federal "judges" and attorneys. *Id*. at 71. They merely *contended* that actual "evidence" somehow "shows that Jordan somehow "wasted judicial resources," Jordan's statements purportedly were "meritless" and "frivolous" (under federal law) "impugning the integrity of the judges in whose courts they were filed." *Id*. But Kansas judges failed to state (or identify admissible evidence of) many *facts* material to showing *how any* Jordan speech/petition actually was frivolous or meritless or violated any rule of conduct.

    *Knowing* they had no *evidence*, Kansas judges resorted to mere (illegal) presumptions. They merely *contended* that "Judge Phillips' order establishes" a mere "presumption that Jordan violated" a *federal* rule and "Judge Smith's July 20, 2020, order" (merely stating the conclusion that Jordan "repeated[ly] "violat[ed]" *federal* "Orders") also "establishes" a mere "presumption these transgressions occurred." *Id*. at 70. Clearly, the Kansas judges—and Federal Judges—failed to state *facts* and they failed to identify *evidence* of *facts*.

    Judge Smith merely asserted the vague, sweeping contention that more than "ten" (unidentified) "motions" were *somehow* "largely frivolous, unprofessional, and scurrilous," and maybe "defamatory." *Id*. at 16, 37-39. *Accord* at 18, 19.

Kansas attorneys also *knowingly* misrepresented that Jordan "violated Judge Smith's June 30, 2020, order." *Id*. at 48, 49.  They knew Judge Smith did not *order*, he merely "warns" and "warning." *Id*. at 16, 39.  *Accord id*. at 50 ("warned").

"Judge Phillips" purportedly "found Jordan made frivolous factual assertions with no reasonable basis in fact about Judge Smith in his filings." *Id*. at 68. "Judge Phillips" merely *contended* that Jordan's speech/petitions "demonstrate[d] his contempt for the Court," and Jordan asserted (*somewhere*) "multiple statements and accusations that had no reasonable basis in fact," so "Judge Phillips" merely *contended* Jordan's speech/petitions "qualifie[d] under" (some unidentified) mere "dictionary-definition of 'contempt'." *Id*. at 14, 30, 35.  *See also id*. at 63 ("Judge Phillips' contempt order").  "Judge Phillips' contempt order" merely *contended* "Jordan failed to establish a factual basis for these claims or a likelihood that such basis could be developed" and that Jordan's "accusations lacked a reasonable basis in fact. These" so-called "findings" purportedly somehow actually "established" Jordan's "contentions were frivolous." *Id*. at 69.

Judges Smith and Phillips fined Jordan $500 and $1,000 for contempt.  *See id*. at 15, 19, 30, 35, 38, 48, 54.  Each *knowingly* (criminally) violated Rules 16 and

7

42 of the Federal Rules of Criminal Procedure, the Fifth Amendment and Supreme Court precedent.  Each concealed—and Judge Phillips continues to criminally conceal—evidence proving Jordan's statements are true.  *This Court* is abusing (leveraging) Kansas's fraudulent disbarment, based on fraudulent fines, to *disbar* Jordan while *this Court* also helps conceal the evidence at issue in Jordan's motion, above.  *Cf.* 18 U.S.C. §§ 1001(a)(1), 1519.

Kansas judges also lied about the evidence that the hearing panel actually admitted.  They lied about Federal Judges' *hearsay* being *admitted* as *evidence* that it was *true*.  They knowingly misrepresented that the hearing panel actually did "admit" such hearsay as "evidence of" Jordan's "misconduct."  *Id*. at 66.  This was a *major* point of contention *throughout* the Kansas litigation.

The *whole point* of the Kansas proceedings (and a *primary point* of Judges Smith's and Phillips's so-called contempt orders and fines) was to pretend judges' conclusory hearsay and lies were *true* and *evidence*.  So the Kansas disciplinary administrator *repeatedly asked* to have Federal Judges' hearsay admitted "to prove the truth of" statements "asserted" therein about Jordan.  *Id*. at 57.

The hearing panel, however, repeatedly refused to admit such hearsay as evidence to "prove the truth" of *any* "matter asserted" against Jordan.  *Id*. at 58

8

citing Kan. Stat. Ann. 60-460(o).  *See also id.* at 57 (court "records were not admitted through KS.A. 60-460(o) to prove the truth of" any "matter asserted in any statements made" therein).

Such hearsay was "admitted" only "to prove the content of" court "record[s]," *i.e.*, only to prove what *the issuing judge* wrote and did (*not* what *anyone else* (including Jordan) wrote or did) "and the panel considers" such hearsay "*only* for that purpose."  *Id.* at 58 (emphasis added).  The hearing panel expressly emphasized why judges' hearsay about Jordan *could not* be admitted as *evidence* such hearsay was *true*.  Kansas "did not call any witnesses or provide any further evidentiary foundation during the formal hearing to support admitting these exhibits for any" such "purpose."  *Id.* at 57.

## SUMMARY OF ARGUMENT

The Order was egregiously unconstitutional in many respects.

## ARGUMENT

Kansas's disbarment was a thoroughly frivolous, fraudulent sham.  The issues here are so extremely and obviously fundamental to our systems of law, justice and government that any judge who would abuse Kansas's order to purport to justify disbarring Jordan is dangerously incompetent or dangerously deceitful.

## I.    Federal Courts Cannot Leverage Kansas Judges' Clear Violations of Kansas Statutes and the Kansas and U.S. Constitutions.

"No state" employee whatsoever may "make or enforce any law" that "abridge[s]" any "privileges or immunities" of American "citizens" or "deprive any person" of any "liberty" or "property, without due process of law; nor deny to any person" essentially "equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  Federal courts cannot leverage state violations of the Constitution to disbar Jordan.  "No person" may "be deprived" of any "liberty" or any "property" by this Court "without" all "due process of law."  Amend. V.  This Court is responsible for protecting "all Privileges and Immunities of Citizens," and it must "guarantee" truly "Republican Form of Government" to the citizens of each state.  Art. IV.

The people and Constitution of Kansas specifically emphasized dispositive points of law.  Only the Kansas legislature possesses the "legislative power of this state."  Kan. Const. Art. 2, § 1.  "All laws of a general nature shall have a uniform operation throughout the state."  *Id*., § 17.  Kansas statues governing findings of fact, evidence, proof, testimony and hearsay clearly are such laws.  Kansas judges (or attorneys) had *no* power to *make* or *enforce any* court rule or ruling contradicting, changing or violating any Kansas statute herein.  Most fundamentally, *no conclusory* contention asserted or invoked by Kansas actually

10

was a "finding of fact," "evidence" or "proof" of anything adverse to Jordan. *Cf.* Kan. Stat. Ann. 60-401(a)-(d), (h) (defining such terms).

Kansas judges and attorneys also had no power to make or enforce any rule or ruling regarding any testimonial privilege for judges. "No special privileges" whatsoever "shall be exercised by" any "tribunal" except to the extent such a privilege was "granted by the" Kansas "legislature." Kan. Const. B. of R. § 2. Kansas failed to prove that any privilege was granted or exercised to enable anyone to avoid testifying under oath regarding any conclusory hearsay.

No judge's hearsay was admissible against Jordan because the "person who made the "statement" was not "present at the hearing" and not "available for cross-examination" regarding "the statement and its subject matter." Kan. Stat. Ann. 60-460(a). *Any* "witness' testimony must be taken in open court." Kan. Stat. Ann. 60-243(a). *Any* "witness may be contradicted and impeached by" Jordan and "may be cross-examined" on *any* "subject matter of the witness' direct examination." *Id*. 60-243(b).

For the crucial "purpose of impairing" the "credibility of" *any* "witness," Jordan must be permitted to "examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the

11

issues of credibility." Kan. Stat. Ann. 60-420. "As a prerequisite for the testimony of" *any* "a witness on a relevant or material matter, there must be evidence that he or she has personal knowledge thereof." Kan. Stat. Ann. 60-419.

## II. This Court Must Afford Jordan the Requested Hearing; Judges' Hearsay Is Not Admissible Evidence Such Hearsay Is True.

The Federal Rules of Appellate Procedure "govern procedure" here. FED.R.APP.P. 1(a)(1). This Court cannot "discipline" Jordan unless *this Court proves how* Jordan's speech/petitions constitute "conduct unbecoming a member of the bar." FED.R.APP.P. 46(c). Jordan may not be disciplined until *this Court proves how* Jordan's speech/petitions constituted misconduct.

Jordan "must be given" a reasonable "opportunity to show" he cannot constitutionally "be suspended or disbarred," including a hearing at which *this Court* must bear *its burden of proof*. FED.R.APP.P. 46(b)(2). This Court "must enter" an "order" that is "appropriate," and it cannot discipline Jordan until "after" a "hearing is held" because Jordan (repeatedly) "requested" a "hearing." FED.R.APP.P. 46(b)(3). *Accord* FED.R.APP.P. 46(c). Jordan's right to such hearing cannot be abridged. *See* U.S. Const. Amends. I, V, X, below.

Mere judges' hearsay about anything potentially adverse to Jordan clearly does not constitute evidence that such hearsay is true. It is no more evidence of its

truth than is lawyers' hearsay in motions, memorandums or briefs.  Even if any

judge ever does state any finding of actual *fact* adverse to Jordan, such findings

"may be referred to as expositions of law upon the facts there disclosed, but they

are not evidence of those facts."  *Mackay v. Easton*, 86 U.S. 619, 620 (1873).

Judges creating (or implying) any evidentiary privilege for any judge to

pretend that judges' lies, vague, conclusory characterizations or hearsay constitutes

*evidence* of their *truth* or that *Jordan's* speech/petitions violated any rule is illegal

and unconstitutional.  "Any" purported "rule" or ruling "creating, abolishing, or

modifying" any "evidentiary privilege shall have no force or effect unless

approved by Act of Congress."  28 U.S.C. § 2074(b).  Prior judges who wish for

their words to injure Jordan in this case must testify under oath.

The federal "rules" of evidence "apply" here and in the federal court

"proceedings" the Kansas judges invoked.  FED.R.EVID. 101, 1101(a).  This

Court cannot violate any relevant rule to pretend to justify disbarring Jordan.

Each finding of fact must be supported by relevant evidence.  *See*

FED.R.EVID. 401.  No fact purportedly establishing that Jordan's speech/petition

constituted misconduct can be judicially noticed because it cannot "be accurately

and readily determined from sources whose accuracy cannot reasonably be

13

questioned." FED.R.EVID. 201(b)(2).  *Every* state or federal judge whose hearsay was (or might be) used against Jordan *lied* and committed multiple federal *crimes*. If this Court does judicially notice any fact, it must inform Jordan and afford him due process of law.  *Cf.* FED.R.EVID. 201(e).

"An original writing" is "required in order to prove" any relevant "content" of Powers' email.  FED.R.EVID. 1002.  No federal court has any power to disbar or suspend Jordan based on any judge's written hearsay about Powers' or Jordan's conduct, because such hearsay is "not admissible" to prove anything adverse to Jordan.  FED.R.EVID. 802.

Any presiding judge "may not" purport to "assume the role of a witness," and "he may not either distort" any "evidence" or "add to it." *Quercia v. United States*, 289 U.S. 466, 470 (1933).  A prior "presiding judge" could "not testify" in such case "as a witness."  FED.R.EVID. 605.

Equally clearly, no presiding federal or state judge could *fabricate* admissible *evidence* or *fabricate* a *presumption* against Jordan by merely inserting falsehoods or conclusory contentions about Jordan (or Powers) in any written hearsay at the conclusion of a case.  No judge's hearsay can prove any judge's hearsay is *true* in any way adverse to Jordan.  "Hearsay is not admissible" as

14

evidence of anything except to the extent permitted by "federal statute" or "rules." FED.R.EVID. 802.  Exceptions exist for certain findings of fact or judgments, which only emphasizes that no exception can facilitate injuring Jordan.  *Cf.* FED.R.EVID. 803(8)(iii), 803(22), 803(23).

Before this Court may treat *any* "hearsay" as true and use it against Jordan, it must be "admitted in evidence" (at a hearing), and Jordan must be afforded an opportunity to call *any* "declarant as a witness" and "examine the declarant on the statement as if on cross-examination," and "the declarant's credibility may be attacked" by "any evidence that would be admissible for those purposes if the declarant had testified as a witness."  FED.R.EVID. 806.  Jordan "is entitled to cross-examine" *any* "witness" who would use his words to injure Jordan. FED.R.EVID. 614.

*Any* "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED.R.EVID. 602.  "Before testifying" *every* "witness must give an oath or affirmation to testify truthfully" to "impress that duty on" *every* "witness's conscience."  FED.R.EVID. 603.

Testimony in open court "forces the witness to submit to cross-examination,"

15

which is the "greatest legal engine ever invented for the discovery of truth," and it "permits" everyone "to observe the demeanor of the witness in making" and explaining "his statement, thus aiding" in "assessing his credibility." *California v. Green*, 399 U.S. 149, 158 (1970). The "object" of "cross-examination" clearly is "to test" the "testimony," and the clear and fundamental "error of this deprivation could not be cured by having" any judge merely "examine" or purport to describe evidence or conduct. *Reilly v. Pinkus*, 338 U.S. 269, 276 (1949). "It certainly is illogical" and "unfair, to permit" hearsay to be used to disbar Jordan and "deprive" Jordan of "all opportunity to interrogate" his accusers. *Id.* at 275. *See also Green*, 399 U.S. at 156-158, 162-164.

## III. Any Action Against Jordan Based on Judges' Hearsay and Conduct Clearly Would Contravene Controlling Precedent.

Any action against Jordan based on this Court's mere receipt of the Kansas order (or even based on the mere contentions therein) would be egregiously illegal and outrageously unconstitutional. "Discipline" does not mean mere judicial retaliation against Jordan. Discipline must be "*designed* to protect the *public*" (not judges injuring the public by lying and committing crimes). *In re Ruffalo*, 390 U.S. 544, 550 (1968) (emphasis added). Courts must *prove* disbarment is being used *only* "for the purpose of preserving the courts of *justice*" and protecting the

16

public from "persons" *proved* "*unfit* to practice" therein. *Ex Parte Wall*, 107 U.S. 265, 288 (1883) (emphasis added).

"[T]he *responsibility* that remains" with *this Court* regarding reciprocal discipline was "authoritatively expounded in *Selling*." *Theard v. United States*, 354 U.S. 278, 282 (1957) (emphasis added). Jordan, as "an officer" of this Court, is "an instrument or agency" of the public "to advance the ends of justice." *Id.* at 281. So this Court must *prove* its "power of disbarment" is used *only* for "protection of the public." *Id*.

Moreover, Jordan cannot "be deprived" of the "liberty" and "property" at stake "without" all "due process of law." U.S. Const. Amend. V. *This Court's* judges are bound by *their* "duty" not "to abdicate" *their* "own functions" (*duties*) "by treating" any prior purported "judgment" as "excluding all inquiry" in this case. *Selling v. Radford*, 243 U.S. 46, 50 (1917). Jordan's "admission to the Bar of" *this* "court is secured" by federal law and the Constitution, so such "right may not be taken away" merely because of any prior purported judgment. *Id*. at 48.

"[B]efore sanction is given" by this Court to anyone's mere "prayer for disbarment," this Court must conduct its own "investigation." *Id.* at 48-49. "[T]he character and scope of" this Court's "investigation" necessarily "must depend

17

upon" purported "acts of misconduct and wrong" and "the nature of the proof relied upon" to "establish" such "misconduct." *Id*. at 49. This Court's judges have "the duty" to "determine for [them]selves" Jordan's "right" to "be a member of" this Court's "Bar." *Id.* at 50. This Court must acknowledge that at least "one" of the "conditions" below "appear[ed]." *Id*. at 50-51.

First, "there was such an infirmity of proof as to facts" purportedly "found" purportedly "establish[ing]" that Jordan's speech/petitions violated a rule of conduct "as to give rise to a clear conviction" that this Court cannot "consistently with" *its* "duty" (to the Constitution, this Court, the public and Jordan) "accept" any prior purported "conclusion" about Jordan's speech/petitions. *Id*. at 51.

"Facts are stubborn things," as John Adams reminding the jury when he successfully defended British soldiers (wrongly) blamed for the Boston Massacre. David McCullough, *John Adams* (2001) at 68. Kansas's order failed to even assert (or identify evidence of) *any* fact establishing than *any* Jordan speech/petition violated *any* rule of conduct. Nobody (anywhere ever) did or can identify any evidence of any fact material to proving that any Jordan speech/petition at issue **(1)** was not directed at exposing and opposing the lies and crimes of judges or **(2)** was false or misleading or *prejudiced* the administration of *justice* or **(3)** could be

18

punished to serve any *government* or *public* interest.

Second, at least one "other grave reason existed" that any action against Jordan for his speech/petitions "would conflict with" this Court's "duty" under "the principles of right and justice." *Id*. Jordan's speech/petitions were very strongly protected and secured by the Constitution and federal law. Retaliating against Jordan therefor was and would be so gravely unjust to Jordan, the public, this Court, and the Constitution that Congress made it criminal.

Disbarment by any court did or would "injure, oppress, threaten, or intimidate" Jordan "in the free exercise or enjoyment of any right or privilege secured to" him "by the Constitution" or federal "laws" and because Jordan "exercised" such "right or privilege." 18 U.S.C. § 241. Each such disbarment was or would be an act "under color of any" legal authority "willfully subject[ing]" Jordan to "the deprivation of any rights, privileges, or immunities secured or protected by the Constitution" or any federal "laws." 18 U.S.C. § 242.

"The language" of Sections 241 and 242 is "plain and unlimited" and it "embraces all of the rights and privileges secured to citizens by all of the Constitution and all" federal "laws." *United States v. Price*, 383 U.S. 787, 800 (1966). The "qualification" regarding "alienage, color and race" in Section 242

19

does not apply "to deprivations of any rights or privileges." *United States v. Classic*, 313 U.S. 299, 326 (1941). "Even judges" clearly "can be punished criminally" under Sections 241 or 242 "for willful deprivations of constitutional rights." *Imbler v. Pachtman*, 424 U.S. 409, 429 (1976).

 With each disbarment order, judges did or would "knowingly and willfully" **(1)** use any "trick, scheme, or device" to falsify, conceal or cover-up any "fact" that was "material" to any federal court proceeding, **(2)** make "any materially false, fictitious, or fraudulent statement or representation" or **(3)** make or use "any false writing or document" while "knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." 18 U.S.C. §§ 1001(a)(1), (2), (3).

 Kansas's order was issued (and sought by Federal Judges) because Jordan provided (and specifically to intimidate Jordan into refraining from providing) to any federal "judge" any "*information*" even "*relating* to" judges' "*possible* commission of*" any "Federal offense." 18 U.S.C. § 1512(b) (emphasis added).

 Prior judges criminally retaliated against Jordan for exposing and opposing the lies and crimes of judges. Judges cannot justify or excuse their own violations of federal law and the Constitution (much less criminal misconduct) by merely purporting to follow illegal orders. American soldiers cannot use the excuse that

20

they were merely following orders; neither can judges or government attorneys.

## IV.    This Court May and Must Adjudicate Only the Actual Case, Not Any Fictitious Appeal.

Federal judges have an "absolute duty" to actually adjudicate, *i.e.*, "decide cases within their jurisdiction." *United States v. Will*, 449 U.S. 200, 215 (1980). *See* U.S. Const. Arts. III, VI, Amends. V, X, *infra*.  But this Court clearly has no power to adjudicate an appeal of—or to pretend Jordan actually appealed—the Kansas order.  *See id*.  Jordan already petitioned for certiorari regarding the frivolous and fraudulent Kansas order and related Tenth Circuit order.  *See* Pet. Nos. 22-684, 22-1029.

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws," so "[o]ne of the first duties of government is to afford that protection."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (Marshall, C.J.).  Clearly, the "very essence of judicial duty" is to "decide" every matter "conformably to the constitution."  *Id.* at 178.  "It is emphatically" judges' "duty" to "say what the law" actually "is" (not knowingly misrepresent or violate the law).  *Id.* at 177.  Courts must actually apply the actual "rule," and judges "must" expressly "expound and interpret that rule" (not merely falsehoods or pretenses about such rule or about lawyers or litigants).  *Id*.

21

Judges *knowingly* violating any controlling legal authority "would subvert the very foundation of" the Constitution. *Id.* at 178. "It would declare, that" judges may "do what is expressly forbidden" by the Constitution, giving them "a practical and real omnipotence." *Id.* Such misconduct "reduces to *nothing*" America's "*greatest* improvement on political institutions—a *written* constitution." *Id.* (emphasis added). Judges "cannot" pretend to have the "discretion" to "sport away" Jordan's "vested rights," as judges did to fine or disbar Jordan. *Id.* at 166.

"The power to create presumptions is not a means of escape from constitutional restrictions." *New York Times Co. v. Sullivan*, 376 U.S. 254, 284 (1964) quoting *Bailey v. Alabama*, 219 U.S. 219, 239 (1911). No state or federal court can eliminate its burden of "showing" what is "required for the forfeiture of [a constitutional] privilege" by merely contending it "presumed" what *must* be "a matter for proof." *Id. See also Bailey* at 239:

> a constitutional prohibition cannot be transgressed indirectly by [creating any] presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions. [No one may pretend presumptions give them powers to] interfere with matters [controlled] by the Federal Constitution.

The Constitution clearly "forbids, so far as [any] civil and political rights are concerned," any government "discrimination" against "*any* citizen [ ]. All citizens

22

are equal before the law." *United States v. Vaello-Madero*, 142 S. Ct. 1539, 1550 (2022) (Thomas, J., concurring) *quoting Gibson v. Mississippi*, 162 U.S. 565, 591 (1896) (Harlan, J., for unanimous court). *Accord Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 283 (2015) (Scalia, Thomas, Alito, JJ., Roberts, C.J., dissenting) ("all citizens are equal before the law").

The "Fifth Amendment has been absorbed in the Fourteenth," and each "extends its protection to lawyers," and neither may "be watered down" merely to facilitate "disbarment and the deprivation of a [lawyer's] livelihood." *Spevack v. Klein*, 385 U.S. 511, 514 (1967). Judges clearly cannot resort to purported "procedure" that "would deny" Jordan "all opportunity" to compel each court "to make a record" by proving each material fact by clear and convincing evidence. *Id.* at 518-19. "The special responsibilities that" Jordan "assume[d]" as an "officer of the court do not carry with them" any "diminution, however limited, of his Fifth Amendment rights." *Id.* at 520 (Fortas, J., concurring).

There is "no room in the" Fifth or Fourteenth Amendments (which necessarily comprise the First Amendment) to discriminate based on mere "classifications of people so as to deny it to some and extend it to others. Lawyers are not excepted from the words 'No person'" in the Fifth Amendment, and courts

23

"can imply no exception."  *Id.* at 516 (majority).

"The threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion."  *Id.* at 515.  Many judges have abused precisely such tactics to injure or intimidate actual or potential critics.  But it is "important" to "society and the bar itself that lawyers be unintimidated—free to think, speak, and act as members of an Independent Bar." *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 273 (1957).  The *Cohen* dissent's "views" were implicit, *i.e*., "need not be elaborated again."  *Spevack* at 514.

> [T]he important role [of] lawyers [ ] in our society [makes it] imperative that they not be discriminated against [regarding] the basic freedoms that are designed to protect the individual against the tyrannical exertion of governmental power.  For [ ] the great purposes underlying [such] freedoms [include affording] independence to those who must discharge important public responsibilities.  [Lawyers], with responsibilities as great as those placed upon any group in our society, must have that independence.

*Cohen v. Hurley*, 366 U.S. 117, 137 (1961) (Black, Douglas, JJ., Warren, C.J., dissenting).

Judges and "courts depend" on an "independent bar" for "the proper performance of [judges' and courts'] duties and responsibilities.  Restricting" conscientious, capable "attorneys" from "presenting arguments and analyses to the courts distorts the legal system by altering the traditional" and *constitutional* "role"

24

of "attorneys." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 544 (2001). "An

informed, independent judiciary" must have "an informed, independent bar." *Id.* at

545. Courts clearly cannot "prohibit[ ] speech and expression upon which courts

must depend for the proper exercise" of "judicial power." *Id.*

Judges cannot "exclude from litigation those arguments and theories" they

deem "unacceptable but which by their nature are within the province of the courts

to consider." *Id.* at 546. Judges cannot refuse to adjudicate the lies and crimes of

judges merely because the people lying and committing crimes are judges.

Moreover, in "First Amendment cases," *each* "court is *obligated* to conduct

an "*independent* examination of the *whole record*" to "make sure that" any

purported "judgment does not constitute a forbidden intrusion on the field of free

expression." *Snyder v. Phelps*, 562 U.S. 443, 454 (2011) (Roberts, C.J., writing for

the Court) (emphasis added). "It is imperative that, when the effective exercise of"

First Amendment "rights is claimed to be abridged," all "courts should 'weigh the

circumstances' and 'appraise the substantiality of the reasons advanced'" to

"support" any "regulations" or punishment of speech. *Thornhill v. Alabama*, 310

U.S. 88, 96 (1940). "[W]hen it is claimed" (as here) that First Amendment

"liberties have been abridged," this Court "cannot allow a" mere "presumption of

25

validity of the exercise of" another court's "power to interfere with" *this Court's*

own "close examination of the substantive [constitutional] claim presented." *Wood*

*v. Georgia*, 370 U.S. 375, 386 (1962).

Due process of law requires much more than the mere empty "enunciation of

a constitutionally acceptable standard" by judges merely purportedly "describing

the effect of" Jordan's (or their own or other judges') "conduct." *Id.* Kansas

judges merely lied about seeing "clear and convincing evidence," and no federal

judge even wrote that much. Any prior judge's mere conclusory contentions "may

not preclude" or in any way diminish *this Court's* "responsibility to examine" all

relevant "evidence to see whether" it "furnishes a rational basis for the

characterization" that other judges "put on it." *Id*.

## V.  Each Court Must (But None Did or Can) Prove All Material Facts by Clear and Convincing Evidence.

No court could (constitutionally) take any action against Jordan merely

because any judge wrote anything about Jordan or based on any mere court rule or

ruling. Nothing in any court rule or ruling could override anything required of all

federal courts and judges by federal statutes, federal rules and the Constitution,

including as emphasized in Supreme Court precedent herein.

Not even federal "rules" can "abridge" or even "modify any substantive

26

right" of Jordan secured by federal statutes or the Constitution. 28 U.S.C. § 2072. All local court "rules shall be consistent with Acts of Congress and" federal "rules of practice and procedure" and the Constitution. 28 U.S.C. § 2071(a). Judges or government attorneys *knowingly* violating *any* right of Jordan secured by *any* provision of federal law or the Constitution is criminal. *See* 18 U.S.C. §§ 241, 242, 371, 401(2).

Kansas and this Court did not and cannot present the requisite proof regarding many facts material to proving that Jordan's speech/petitions violated any rule of conduct. Any purported "proof presented to show" each material fact must have "the convincing clarity which the constitutional standard demands." *New York Times*, 376 U.S. at 285-86. The "First Amendment mandates a 'clear and convincing' standard" of proof of each material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Such "standard of proof" is "embodied in the Due Process Clause" to establish "the degree of confidence" *each court must* "have in the correctness" of its *own* "factual conclusions." *Addington v. Texas*, 441 U.S. 418, 423 (1979). It "allocate[s] the risk of error" *to the court* repressing Jordan's speech, and "indicate[s] the" great "importance attached to the ultimate decision." *Id*. It

"reflects the" great "value society places" on the "liberty" at stake.  *Id*. at 425.

The "clear" and "convincing" standard "reduce[s] the risk to" Jordan "of having his reputation tarnished erroneously by increasing" each *court's* "burden of proof." *Id*. at 424.  Such "level of certainty" is "necessary to preserve fundamental fairness" in "government-initiated proceedings that threaten" an "individual" with a "significant deprivation of liberty" or "stigma." *Santosky v. Kramer*, 455 U.S. 745, 756 (1982).

The First "Amendment's plain text covers" Jordan's "conduct" so "the Constitution presumptively protects" Jordan's "conduct." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2126 (2022).  So *this Court* must "justify" any "regulation" of Jordan's speech/petitions, and to do so *this Court* "must demonstrate" that its orders are "consistent with this Nation's historical tradition" of *protecting* speech/petitions exposing or opposing abuses of power.  *Id*.  *This Court* "must affirmatively prove that" its orders are within this *Nation's* long and strong "historical tradition" of protecting speech, assembly and petitioning within "the *outer* bounds" of such "right[s]."  *Id*. at 2127 (emphasis added).  No one did or can bear any such burden regarding Jordan's speech/petitions.

"Only if" *this Court proves* that Jordan's "conduct falls outside" the

28

"unqualified command[s]" in the First Amendment and *proved* that any regulation

or discipline is "consistent with this Nation's historical tradition" could any action

against Jordan be constitutional. *Id.* at 2126 *quoting Konigsberg v. State Bar of

Cal.*, 366 U.S. 36, 50, n.10 (1961). The true "significance" of Jordan's rights must

"be gathered" by "considering their origin and the line of their growth."

*Konigsberg* at 50, n. 10 (expressly pertaining to "freedom of speech" relevant to

attorney discipline). For evidence of such origin and line of growth, see the

remainder of this brief.

   "When First Amendment compliance is the point to be proved, the risk of

non-persuasion" always "must rest with the Government, not with the citizen."

*United States v. Playboy Entertainment Group, Inc*., 529 U. S. 803, 818 (2000).

"When" any "Government restricts [any] speech, the Government" *always* "bears

the burden of *proving* the constitutionality of its actions." *Id.* at 816 (emphasis

added). "When the Government seeks to restrict [*any*] speech based on its

content," *any* potential "presumption of constitutionality" must be "reversed.

Content-based regulations are presumptively invalid, and the Government bears

the burden to rebut that presumption." *Id*. at 817 (cleaned up). Neither Kansas nor

this Court did or can bear any relevant burden.

Kansas's order expressly targeted Jordan's "speech on the basis of its content and burden[ed] a category of speech that" is "at the core of our First Amendment freedoms," *i.e.*, "speech about the qualifications of [people holding or seeking] public office." *Republican Party v. White*, 536 U.S. 765, 774 (2002).

*This Court* must *prove* it "determine[d] the constitutionality of" each relevant "restriction" with "strict scrutiny," *i.e.*, *this Court* must "prove that" *all* its actions were "(1) *narrowly* tailored, to serve (2) a *compelling*" *public* "interest." *Id*. at 774-75 (emphasis added). *This Court* "must *demonstrate* that" none of its actions "unnecessarily circumscribe[d] *protected* expression." *Id*. at 775 (emphasis added).

"Content-based laws" (or court rules or rulings) are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Clearly, this Court and Kansas targeted the *content* and *viewpoint* of Jordan's speech/petitions. *Cf. id*. at 163-64 (identifying types of "content-based" restrictions). This Court's conduct can be "be justified only if" *this Court* "proves that" its conduct was "narrowly tailored to serve" *public* "interests" that are "compelling." *Id*. at 163.

*This Court* must "*demonstrate* that" any "differentiation between" Jordan's

30

speech and other lawyer, litigant or judicial speech "furthers a *compelling* governmental interest and is *narrowly* tailored to that end." *Id*. at 171 (emphasis added). Each application of any rule or ruling "must" be able to "satisfy strict scrutiny." *Id*. at 163-64. This Court (and Kansas) did not and cannot do so. No court did or can prove that the *public* has *any* interest in enabling presiding judges to abuse their positions and powers to lie about facts, evidence or legal authorities or *knowingly* violate controlling law and the Constitution.

Prior judges (or attorneys) retaliating against Jordan for his speech/petitions clearly and irrefutably were illegally "attempt[ing] directly to control speech" exposing and opposing federal employees' criminal misconduct, not "to protect" something that was "*shown* to be" an "interest clearly within the sphere of governmental concern" from "an evil" that was "*shown* to be grave." *Speiser v. Randall*, 357 U.S. 513, 527 (1958) (emphasis added).

Whenever "the constitutional right to speak is sought to be deterred by" any "general" rule (as it is here and was in Kansas), "due process demands that the speech be unencumbered until the" government "comes forward with sufficient proof to justify its inhibition." *Id*. at 528-29. This Court "clearly has no such compelling interest at stake as to justify" any "short-cut procedure" (such as its

31

prior orders in this case) or any other "short-cut procedure" abused by prior judges for "suppressing protected speech." *Id*. at 529.  *Cf. also id.* at 520-21.

## VI.    The Constitution Was Designed to Counter Officials' (*e.g*., this Court's and Kansas's Judges') Lust for Illegitimate Power.

The Founders foresaw this story unfolding hundreds of years ago—because it was told many times in more than a thousand years of history.  This story is as old and obvious as brother killing brother and fathers (for their *own* sins) sacrificing their sons.  The Founders saw and foresaw some judges' vicious, wolf-like spirit.

"If" the people "become inattentive" to "public affairs," then "[legislators], judges and governors shall all become wolves."  Letter Thomas Jefferson to Edward Carrington (Jan. 16, 1787) (https://press-pubs.uchicago.edu/founders/tocs/ amendI_speech.html).  If the people fail to govern their governors, then "under pretence of governing" they "all*"* will act like "wolves" and attack people like "sheep." *Id*.  The freedom of speech and press is "the only safeguard of the public liberty." *Id*. "The people" *must* be "censors of their governors" to "keep" public servants "to the true principles of their institution." *Id*.

McCullough in *John Adams* quoted Adams saying the same.  "My fundamental maxim of government is never trust the lamb to the wolf." *Id*. at 420-

32

21. "There is danger from all men. The only maxim of a free government ought to be to trust no man living with the power to endanger the public liberty." *Id*. at 70. "The love of power is insatiable and uncontrollable." *Id*. Abigail Adams heartily agreed. "Remember all men would be tyrants if they could;" people with power are "naturally tyrannical," and that "is a truth so thoroughly established as to admit no dispute." *Id*. at 104.

To protect themselves and this Nation, *the people* must "dare to read, think, speak, and write," *especially* regarding "that most dreaded and envied kind of knowledge," *i.e*., "of the characters and conduct of their rulers" to which the people "have a right, an indisputable, unalienable, indefeasible, divine right" because "Rulers are" (and the people must ensure they are) "no more than attorneys, agents, and trustees, for the people." *Id*. at 60 quoting Adams.

The Founders knew that people who "govern" would not be "angels," so the Constitution and the law "oblige" judges "to control" themselves. Federalist No. 51 (James Madison) (https://guides.loc.gov/federalist-papers/full-text). Two great purposes of the Constitution of "great importance" to our "republic" were, first "to guard" our "society against the oppression of its rulers," and, second, "to guard" parts of "society against the injustice of" any "other part." *Id*.

33

The Founders knew that judicial abuses of power under the common law (including by vicious repression of expression) posed extreme dangers to liberty. They emphasized that "liberty" (and the people) "have every thing to fear from" any "union" of "judiciary" powers with the powers of "the other departments" (as under the common law and as some of today's judges abuse so-called disciplinary proceedings) because when "the power of judging" is "not separated from the legislative and executive powers," the people will have "no liberty."  Federalist No. 78 (Alexander Hamilton) (https://guides.loc.gov/federalist-papers/full-text). So the Constitution commands "judges to do their duty as *faithful* guardians of the *Constitution*."  *Id*. (emphasis added).

For those very reasons, the Founders wrote, ratified and repeatedly revised our *written* "Constitution" to protect "the *People*," including specifically to "establish *Justice*," "promote the general *Welfare*, and secure the Blessings of *Liberty*."  U.S. Const. Preamble (emphasis added).  By far, the biggest, boldest, most emphatic words in the Constitution are its first:  "We the People."  *Id*.

Some of the Constitution's most essential (most clearly stating its essence, as well as most important) words are the first and last of the Bill of Rights.  Not even "Congress" has the power to abridge "the *freedom* of speech" and "press" and

34

"the right of the *people* peaceably to assemble" and "petition the Government" to "redress" *any* "grievances."  Amend. I (emphasis added).  *All* "powers" (including the foregoing) "not delegated to" Congress, courts or the president "by the Constitution" clearly "are reserved" to "the people."  Amend. X.

The Constitution commands federal judges to speak *for* the people.  Federal "judicial Power shall extend to all Cases, in Law and Equity, arising under" the "Constitution."  Art. III.  The Constitution also precludes judicial speech violating peoples' rights.  "No person" may "be deprived" of any "liberty" or any "property" by any judge "without" all "due process of law."  Amend. V.

The Constitution precludes violating specific legal authorities.  The "Constitution" and federal "Laws" are "the supreme Law of the Land" governing all Jordan's cases, and all state and federal "Judges" are "bound thereby;" moreover, "all" (state and federal) court "Officers" were and are "bound" to "*support* this Constitution" in all official conduct.  Art. VI (emphasis added).  *No* "judicial Power" can "extend" any further than allowed "under" the "Constitution" and federal "Laws," and all the "Power" of any quantity of "inferior" federal or state courts is less than the "Power" of the "one supreme Court" when it applies or construes the Constitution.  Art. III.

35

The Constitution pointedly emphasized that federal judges may "hold their Offices" *only* "during good Behaviour." *Id.* All the foregoing words conclusively prove that when judges knowingly violate their duties under and to the Constitution and to the people, the people (including lawyers, juries and the public) may exercise "the freedom of speech" and "press" and "the right" to "petition the Government" to expose and oppose such judges and their misconduct. Amend. I.

Bad judicial behavior clearly includes lying or deceiving about material facts or relevant evidence or *knowingly* misrepresenting or *knowingly* violating controlling law or the Constitution. Every federal judge knows that all federal judges must "*support* and *defend* the Constitution" against "*all* enemies," including judges attacking the Constitution. 5 U.S.C. § 3331 (emphasis added). "Each" federal "judge" must "administer *justice*" and "do *equal right* to" judges, lawyers and litigants, and "*faithfully* and *impartially* discharge and perform all" professional "duties" under "the Constitution and" federal "laws." 28 U.S.C. § 453 (emphasis added).

Despite everything in the Constitution, the Founders foresaw that people with power would abuse it, so (exercising the freedom of speech and press), the people wrote, ratified and revised the Constitution so that such freedom may:

36

> serve as a powerful antidote to any abuses of power by governmental
> officials and as a constitutionally chosen means for keeping [public]
> officials [ ] responsible to all the people whom they [purport] to serve.
> Suppression of [the freedom of speech and] press to praise or criticize
> governmental agents and to clamor and contend for or against change
> ... muzzles one of the very agencies the Framers of our Constitution
> thoughtfully and deliberately selected to improve our society and keep
> it free.

*Mills v. Alabama*, 384 U.S. 214, 219 (1966).

In the 1700's, "the press" clearly did not refer to any non-existent press

corps.  "The press" meant means of mass communication.  Often, the people

whose words were protected were lawyers who submitted pieces to printers (with

printing presses).  Then, as now, lawyers represent people or the public against

public officials, regardless of whether their writing consists of court filings, letters,

articles or books.

> The liberty of the press [ ] necessarily embraces pamphlets and
> leaflets[, which] have been historic weapons in the defense of liberty,
> as the pamphlets of Thomas Paine and others in our own history
> abundantly attest. The [freedom of the] press [protects] every sort of
> publication which affords a vehicle of information and opinion ….
> [Courts should emphasize] the vital importance of protecting this
> essential liberty from every sort of infringement ….

*Lowe v. SEC*, 472 U.S. 181, 205 (1985) *quoting Lovell v. Griffin*, 303 U.S. 444,

452 (1938).  *Accord Hill v. Colorado*, 530 U.S. 703, 781 (2000) (Scalia, Thomas,

JJ., dissenting).

Jordan's "**speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection**." *Snyder*, 562 U.S. 452 *quoting Connick v. Myers*, 461 U.S. 138, 145 (1983) (pertaining specifically to government attorney speech) (cleaned up) (emphasis added). *See also id*. at 453 (discussing when "[s]peech deals with matters of public concern").

It "is a *bedrock* principle underlying the First Amendment" (and the entire Constitution) that "the government," *i.e.*, public *servants*, clearly "may not prohibit the expression of an idea" by a *sovereign citizen* "simply because" some public servant "finds the idea" merely "offensive or disagreeable." *Id*. (emphasis added) *quoting Texas v. Johnson*, 491 U.S. 397, 414 (1989). Clearly, "the point of all speech protection" is "to shield just those choices of content" by *sovereign citizens* "that in someone's eyes are misguided, or even hurtful." *Id*. (citation omitted).

Jordan's "**speech concerning public affairs" is "the *essence* of *self-government***" and "debate on [such] issues *should* be *uninhibited*, *robust*, and *wide-open*," and it "may well include *vehement*, *caustic*," and "*unpleasantly sharp* attacks on government and public officials." *Garrison v. Louisiana,* 379 U.S. 64, 74-75 (1964) (emphasis added). *Accord Snyder*, 562 U.S. at 452.

38

The Constitution and this Nation's history evidence *both* "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, *and* that [such debate] may well include vehement, caustic" and "unpleasantly sharp attacks on government and public officials." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) *quoting New York Times*, 376 U.S. at 270 (emphasis in *Rosenblatt*). *See also id.* (emphasis added):

> [The people and our system of government have] a *strong interest* in *debate on public issues*, and [ ] *debate about those persons who are in a position significantly to influence the resolution of those issues*. **Criticism of government is at the very center of the constitutionally protected area of free discussion**. **Criticism of those responsible for government operations must be free**, lest criticism of government itself be penalized.

If a lawyer or litigant "resorts" to even "exaggeration" and "vilification of men who have been, or are, prominent" to expose and oppose presiding judges' lies and crimes, that is his right. *New York Times*, 376 U.S. at 271 *quoting Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940). Clearly, "the people of this nation have ordained in the light of history" that "these liberties" are "essential to enlightened opinion and right conduct on the part of" all American "citizens" (including judges). *Id.* (both decisions).

The "*public interest* in a *free flow of information* to the *people* concerning

39

public officials, their *servants*" is "*paramount*," so "*anything* which" even "might *touch* on an official's fitness for office is relevant," including judges' "dishonesty, malfeasance, or improper motivation." *Garrison,* 379 U.S. at 77 (emphasis added).

"*Truth* may not be the subject of" *any* type of content-based "sanctions" "where discussion of *public affairs* is concerned," so "*only*" demonstrably "*false* statements" may be punished with "either civil or criminal sanctions." *Id.* at 74 (emphasis added) (protecting government attorney's public criticism of eight judges, including implying they were criminally corrupt). The Constitution "*absolutely* prohibits" *any* type of content-based "punishment of *truthful* criticism" of *any* public official's official conduct. *Id.* at 78 (emphasis added). *Accord Pickering v. Board of Ed.*, 391 U.S. 563, 574 (1968) (precluding discharge of government employee).

Any "statement of opinion" by Jordan "relating to matters of public concern which does *not* contain a *provably false factual* connotation will receive *full constitutional protection*." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (emphasis added). Jordan's speech cannot be punished without *proof* that it at least "impl[ied] a *false* assertion of *fact*." *Id.* at 19 (emphasis added).

Judges have no power to punish Jordan's truthful criticism or his pursuit of

40

truth.  "Those who won our independence had confidence" (*not* in *unsupervised*

public officials, but) "in the power of *free* and *fearless reasoning* and

*communication* of ideas" among the public and public servants "to *discover* and

*spread*" the "*truth*."  *Wood*, 370 U.S. at 388 (emphasis added) *quoting Thornhill*,

310 U.S. at 95.

## VII.  Any Action Against Jordan for Exposing and Opposing Judges' Lies and Crimes Was and Would Be Obscenely Unconstitutional.

Kansas's "application" of all disciplinary "Rule[s]" clearly and irrefutably

"violate[d] the First Amendment" because Jordan's speech "neither in law nor in

fact created any threat of real prejudice to" any administration of *justice*.  *Gentile*

*v. State Bar of Nev*., 501 U.S. 1030, 1033 (1991).  The same is true of all Jordan's

speech/petitions and every rule or ruling any court might invoke against Jordan.

"The judicial system" plays "a vital part in a democratic state, and the public

has a legitimate interest in their operations." *Gentile* at 1035 (opinion of Kennedy,

Marshall, Blackmun, Stevens, JJ.). Indeed, "public comment about pending cases"

crucially "guards against the *miscarriage of justice* by subjecting" public "judicial

processes to extensive public scrutiny and criticism."  *Id*. *quoting Sheppard v.*

*Maxwell*, 384 U.S. 333, 350 (1966) (emphasis added).

"Public vigilance" regarding judicial conduct "serves" America "well"

41

because "[w]ithout publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account." *Id. quoting In re Oliver*, 333 U.S. 257, 271 (1948) (*quoting* Jeremy Bentham). Public criticism of judges and judicial proceedings "has always been recognized as a" *vital* "safeguard against any attempt to employ our courts as instruments of persecution. [Judicial] knowledge that" judicial conduct is "subject to contemporaneous review in the forum of public opinion" is *intended* be "an effective restraint" on "abuse of judicial power." *Oliver* at 270.

Clearly, "the law" (including the First and Fifth Amendments) "gives judges as persons, or courts as institutions" absolutely "no greater immunity from criticism" (or the Constitution) "than other persons or institutions." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978) (cleaned up). "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Id*. So "speech cannot be punished" merely "to protect the court as a mystical entity" or "judges as individuals or as anointed priests set apart from the community and spared the criticism to which" all "other public servants are exposed." *Id*. at 842.

President Roosevelt and Judge Taft (who intended to and did become Chief

42

Justice), *speaking to groups of lawyers for dissemination nationwide*, strongly

emphasized that criticism such as Jordan's could not be punished and should not be

discouraged.  *See* 41 Cong. Rec. S23-24 (Dec. 4, 1906), 59th Cong., 2d Sess.

(President Theodore Roosevelt Annual Message to Congress (Dec. 3, 1906)

quoting Hon. William Howard Taft (6th Cir.), *Recent Criticism of the Federal

Judiciary*, Address to American Bar Association Annual Meeting (1895) (also

available at https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=5392

&context=penn_law_review).

 The Constitution and copious Supreme Court precedent expressly and

emphatically subordinated judges to justice and First Amendment freedoms.  *See

New York Times,* 376 U.S. at 272-73 (citations omitted; cleaned up) (emphasis

added):

> Where judicial officers are involved [any] concern for the dignity and
> reputation of the courts does not justify the punishment [ ] of criticism
> of [any] judge or his decision …. [Any] *repression* can be *justified*, if
> at all, *only* by a *clear and present danger* of the *obstruction* of *justice*.
> [All] judges are to be treated as 'men of fortitude, able to thrive in a
> hardy climate,' [exactly like] other government officials [ ]. *Criticism*
> of their *official conduct* does not lose its *constitutional protection*
> merely because it is effective criticism and hence diminishes their
> official reputations.

> Judges must cease their pernicious and fictitious pretenses that "reflect the

obsolete doctrine that the governed must not criticize their governors." *Id*. at 272; *id*. at 301 (Black, Douglas, JJ., concurring). "The protection of the public requires" both "discussion" and "information" and "[t]he interest of the public" far "outweighs the interest" of "any" offended "individual." *Id*. (majority and concurring opinions). *Zenger* was crucial in helping establish America's tradition of freedom of expression. *See id.* at 301 (concurrence):

> The American Colonists were not willing, nor should we be, to take the risk that "men who injure and oppress the people under their administration [and] provoke them to cry out and complain" will also be empowered to "make that very complaint the foundation for new oppressions and prosecutions." *The Trial of John Peter Zenger*, 17 Howell's St. Tr. 675, 721-722 (1735).

Courts "may not prohibit" any "modes of expression and association protected by the First[, Fifth] and Fourteenth Amendments" by merely invoking the mere general "power to regulate the legal profession." *NAACP v. Button*, 371 U.S. 415, 428-29 (1963). "[I]t is no answer to" Jordan's "constitutional claims asserted" that "the purpose of" any "regulations" or rulings "was merely to insure high professional standards." *Id*. at 438-39. Courts "may not, under the [mere] guise of prohibiting professional misconduct, ignore" or violate lawyer or litigant "constitutional rights" (as this Court and Kansas did). *Id*. at 439.

Courts "cannot foreclose the exercise of *constitutional* rights by mere

44

*labels,*" regardless of whether the label is applied to the law, the oppressor or the oppressed. *Id*. at 429 (emphasis added). No "regulatory measures" (court rule, ruling or opinion), "no matter how sophisticated," can "be employed in purpose or in effect to stifle, penalize, or curb" Jordan's "exercise of First Amendment rights." *Id*. at 439. *Accord New York Times*, 376 U.S. at 269 (dispensing with all "mere labels" under various "formulae for the repression of expression"). "The test is not the form in which [government] power has been applied but, whatever the form, whether such power" was "exercised" *constitutionally*. *Id*. at 265.

## VIII.  Freedom of Expression Is *from* Judges' and Legislators' Historical Oppression and Repression.

The Constitution expressly and emphatically secures freedom of expression precisely because of the long, dark history of brutal repression of expression by judges and legislators. Judges drove the descent into darkness to its blackest depths—and kept it there for hundreds of years.

"Blackstone" and his "*Commentaries on the Laws of England*" and "Sir Edward Coke" and "his report of the case *De Libellis Famosis* in 1606" provide compelling reminders of judges' terrifying abuses of power to punish criticism of people in power. Stephen D. Solomon, *Revolutionary Dissent: How the Founding Generation Created the Freedom of Speech* at 100 (2016).

45

The infamous Star Chamber enforced Parliament's cruel fiction that exposing "corrupt or wicked Magistrates" was a "criminal act" ("seditious libel") *because* such expression (merely) revealed the greatest "scandal of government," *i.e.*, that "corrupt or wicked Magistrates" held positions of power.  *Id*. at 39.  But "with *De Libellis Famosis*, the Star Chamber" judges fabricated the even more absurd and cruel fiction that "a true statement" was criminal.  *Id*.  Such monstrous "precedent" of so-called "common law" became a horrific "common maxim," *i.e.*, "the greater the truth, the greater the libel."  *Id*.

That vile, poisonous "common law" of repression "lived on" in England and was "exported to the colonies."  *Id*.  The so-called "common law" and "legal commentators in America" blindly "followed the lead of Coke and Blackstone," ruining how American "lawyers and judges viewed freedom of expression" for many "years" even after "the Revolution."  *Id*. at 100.  Even to this day.

Back in 1765, "Blackstone" wrote that "freedom of the press meant" only "the right" to print "without prior censorship," *i.e.*, not freedom from punishment for seditious libel.  *Id*. at 4.  Bizarrely, many American lawyers and judges did (and do) view Blackstone's pre-revolutionary history as far more important than all America's revolutionary and post-revolutionary reality.

46

Even today, many lawyers and judges ignore or fail to comprehend the significance of *centuries* of powerful demonstrations of the freedom of speech and press, including attorney arguments in court, jury nullifications, publications by *generations* of 1700's freedom fighters (including *Cato's Letters*, *Common Sense*) and *generations* of abolitionists and suffragists, and even writing and ratifying Congress's 1774 and 1776 Declarations, the Constitution and many amendments.

Even the wise Justice Holmes initially was deceived and believed that because the common law of "criminal libel" required "punishment" of even "true" criticism, such "rule" (somehow absurdly) "applies" even to purported "contempts." *Patterson v. Colorado*, 205 U.S. 454, 462 (1907).

The horrific history of repression of expression by judges and legislators (extending into the early 1900's) is why good and great judges (including Justice Holmes) came to strongly support and defend First Amendment freedoms.  It is why good and great Federalists and Antifederalists (including Madison, Jefferson and George Mason) (and state constitutional conventions) demanded documentation of "the freedom of speech" and "press" and "the right" to "assemble" and "to petition."  U.S. Const. Amend. I.

For hundreds of years, judges and legislators viciously wielded the law of

47

seditious libel to terrorize the people.  They cruelly and brutally abused critics. "Most convictions" carried "fines and imprisonment," which could physically or fiscally crush critics.  Solomon, *Revolutionary Dissent* at 19.  Sometimes, vicious officials emphasized their point with extreme violence.  "Courts sometimes ordered" critics "ears be cropped or cut off entirely."  *Id*.  One critic was "lashed thirty-nine times on his bare back." *Id*.  Another "was fined" *and* "whipped" *and* "both his ears" were "cut off" *and* he was "banished."  *Id*. at 20.  Another "had his arms broken" and *then* was forced "to run a gauntlet of men beating him with" muskets *and then* "authorities pierced his tongue with an awl."  *Id*.  at 19-20.

The Founders knew that judicial abuses of power under the common law posed an extreme danger to liberty.  *See* page 58, below, quoting Declaration of Independence; page 34, above, quoting Federalist No. 78.  By similarly combining actual or usurped legislative and executive powers with judicial powers, judges disbarred Jordan.  Thus, some of today vicious, malicious judges continue to treat the people to displays of tyranny precisely such as the Founders feared and sought to preclude, including with the First, Fifth and Tenth Amendments.

Despite the long and strong history of freedom of speech and press in this Nation before and after the Revolution and during the past 100 years of Supreme

48

Court precedent, the ghosts of Blackstone and the Star Chamber haunt American courts to this day. The dead hand of Star Chamber judges works the hands of today's judges to continue strangling speech of American attorneys who did or would expose and oppose judicial misconduct.

## IX.    First Amendment Freedoms Exist to Protect People (including Lawyers) from Abusive Officials (including Judges).

Wise people "always" "widely understood" that the First Amendment "codified" multiple "pre-existing right[s]," that clearly were not "*granted* by the Constitution" or "*in any manner dependent* upon" the Constitution for their "existence." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added). "Constitutional rights are enshrined with the scope they were understood" (*by the people*) "to have when the people adopted them, whether or not future legislatures" or "judges think that scope too broad." *Id*. at 634-35. "Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Bruen*, 142 S.Ct. 2136 (emphasis by the Court).

The First Amendment "is the very product of an interest balancing by the people" and it clearly "elevates above all other interests the right of law-abiding, responsible citizens" to use speech and petitions "for self-defense" against abusive officials. *Bruen* at 2131 *quoting Heller* at 635. "It is this balance—struck by the

49

traditions of the American people—that demands" the "unqualified deference" of all public servants.  *Id.*

      The relevant traditions began by at least the 1720's.  From then to now, perhaps the most famous expression about the freedom of expression was and is that "Freedom of speech is the great bulwark of Liberty."  Jacob Mchangma, *Free Speech:  A History from Socrates to Social Media* at 124 (2022) *quoting Cato's Letters* No. 15 (1721).  That was famous shorthand for the famous supporting reasoning.  "Freedom of speech" is "the terror of traitors and oppressors" (tyrants), so it is an effective "barrier against them."  *Id.* (both sources).  *See also Cato's Letters* at https://oll.libertyfund.org/title/trenchard-catos-letters-4-vols-in-2-lf-ed. Benjamin Franklin agreed.  Perhaps his first revolutionary act and first important exercise and defense of freedom of expression consisted of re-publishing most of *Cato's Letters* No. 15 (specifically to oppose government repression of criticism).

      "Without Freedom of Thought, there can be no such Thing as Wisdom" and there can be "no such Thing as publick Liberty, without Freedom of Speech." Benjamin Franklin, Silence Dogood No. 8, The New-England Courant (July 9, 1722) (https://founders.archives.gov/ documents/ Franklin/01-01-02-0015). "Freedom of Speech" is a "sacred Privilege" that "is so essential to free

50

Governments" that "the Security of Property, and the Freedom of Speech always go together" because "in those wretched Countries" (and courts) "where a Man cannot call his Tongue his own, he can scarce call any Thing else his own. Whoever would overthrow the Liberty of a Nation" (or people) "must begin by subduing the Freeness of Speech." *Id.*

"Men ought to speak well of *their Governours*" but *only* "while *their Governours* deserve to be well spoken of" because for public servants "to do publick Mischief, without" the public "hearing of it, is only the" corrosive and dangerous "Prerogative" of "Tyranny" (tyrants). *Id.* "Government" is "nothing" but "Trustees of the People" acting "upon the Interest and Affairs of the People: And" it "is the Part and Business of the People" to actually "see whether" such "publick Matters" have been "well or ill transacted." *Id.*

The "bulwark of Liberty" expression and *Cato's Letters* were quoted often to oppose abusive public officials. Starting in the 1720's, excerpts from *Cato's Letters* were "printed in virtually all the newspapers in the colonies and widely quoted in political essays, making them among the most influential political essays for the American founding generation." Solomon, *Revolutionary Dissent* at 44. Many "pamphleteers of the founding generation put talismanic weight" on "*Cato's*

51

*Letters*" precisely because they presented "political liberty" together with "freedom of the press." *Id*. at 187.

*Cato's Letters* also were phenomenally important in prompting the people (many lawyers, juries and assemblies) to nullify the common law and despicable judicial or legislative practices by thwarting seditious libel prosecutions starting with *Zenger* in 1735.

Zenger's attorney (the famous Philadelphia lawyer, Andrew Hamilton) insisted that without "falsehood" there is no "scandal." *Id*. at 51. Criticism that is not "false" cannot be "scandalous." *Id*. at 53. "[I]n a free government," officials "will not be able to stop people's mouths when they feel themselves oppressed" by a "ruler" who "brings his personal failings" or "vices" into "his administration." *Id*. The people have the right of "exposing and opposing arbitrary power by speaking the truth." *Id*. The people "have the right publicly to remonstrate" any "abuses of power, in the strongest terms, to put their neighbors upon their guard, against the craft or open violence of men in authority." *Id*.

Officials "who injure and oppress the people under their administration" and "provoke them to cry out and complain" cannot "make that very complaint the foundation for new oppressions and prosecutions." *Id*. New York's Governor and

52

Chief Justice disagreed, but they and the common law were defeated by the people (the lawyer and the jury).

To the "people," the "idea that a man could be" punished "for speaking the truth" about abusive officials or "expressing a critical opinion" about them "was an affront to liberty." *Id*. at 55. So "in less than thirty minutes," the jury found Zenger "not guilty of seditious libel." *Id*. at 54.

Of vastly greater importance was the tradition including Zenger, Hamilton, and *Cato's Letters*. "News of the verdict spread" like wildfire "up and down the coast," and Zenger also "published a book" about the "trial, which was probably the most popular book in America up to that time." *Id*. As a result of *Cato's Letters*, Hamilton's arguments, the jury's verdict, newspaper coverage, and Zenger's book, "until independence, common law cases against dissidents [for seditious libel] all but disappeared," and Zenger's "acquittal is often noted as a landmark in the history of freedom of the press." *Id*. at 55.

The foregoing and following facts are profoundly important to understanding how colonial Americans understood and exercised the freedom of speech and press. "[T]he printing press changed everything" by facilitating "communication [with] large numbers of people who could then organize their

53

opposition more effectively." *Id*. at 36.  People assembling in taverns and coffeehouses also were crucial to the people's understanding and exercise of the freedom of speech and press.  *See, e.g., id*. at 8, 35-36, 60-62, 64-65, 200.  Indeed, "coffeehouses were known" as "penny universities" because "patrons paid one pence to enter and an additional one or two pence for coffee or tea and access to the newspapers and pamphlets left out on the tables." *Id*. at 61.

"During the 1700s most citizens were literate and nearly everyone read a newspaper." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) citing Bensen Bobrick, *Angel in the Whirlwind: The Triumph of the American Revolution* at 47-48 (1997). "This broad literacy and the people's political involvement in their democratic institutions transformed the average American into a citizen-lawyer." *Id*. citing Bobrick at 49.

In 1767, the Massachusetts popular assembly also thwarted a seditious libel prosecution by famously echoing *Cato's Letters*.  Solomon, *Revolutionary Dissent* at 83-87.  "The Liberty of the Press is a great Bulwark of the Liberty of the People: It is, therefore," the "Duty of those who are constituted the Guardians of the People's Rights" (including legislators, judges, lawyers and publishers) "to defend them [rights] and maintain it [the bulwark]." *Id*. at 86.

54

In 1767 "Samuel Adams, writing" in the *Boston Gazette* also attacked the Massachusetts Governor and Chief Justice by re-emphasizing that freedom of expression was "*the bulwark of the People's Liberties*;" indeed, "THERE is nothing so *fretting* and *vexatious*; nothing so justly TERRIBLE to tyrants, and their tools and abettors, as a FREE PRESS."  Mchangma, *Free Speech* at 162.

In another famous seditious libel trial in 1770, another writer ("Father of Candor") echoed *Cato's Letters* and Hamilton's famous argument in *Zenger*.  "The liberty of exposing and opposing a bad Administration by the pen is among the necessary privileges of a free people, and is perhaps the greatest benefit" of "the liberty of the press. [Officials,] who by their misdeeds provoke the people to cry out and complain," cannot "make that very complaint the foundation of new oppression, by prosecuting the same as a libel."  Solomon, *Revolutionary Dissent* at 144-45.

Immediately before the Declaration of Independence, George Mason and Virginia's legislature (including James Madison) strongly emphasized that "the freedom of the Press is one of the greatest bulwarks of liberty, and can never be restrained but by despotick Governments."  Virginia Declaration of Rights §12 (June 12, 1776).

55

Madison subsequently proposed the following for the First Amendment: "The people shall not be deprived or abridged of their right to speak, to write, or to publish their sentiments; and the freedom of the press, as one of the great bulwarks of liberty, shall be inviolable." 1 Annals of Cong. 434 (1789).

Congress in 1774 and the Supreme Court in 1940 emphasized something similar. Specifically to induce Quebec to join America, "Congress" emphasized that "the freedom of the press" was one of Americans' "five great rights" especially because it serves "diffusion of liberal sentiments on the administration of Government" precisely so that "oppressive officers" can be "ashamed or intimidated, into more honourable and just modes of conducting [public] affairs." *Thornhill*, 310 U.S. at 102 *quoting* Address to the Inhabitants of Quebec, First Continental Congress (Oct. 26, 1774). The foregoing clarified and emphasized the meaning of more formal declarations by Congress days earlier.

The "people" of America "elected" their "Congress," which declared all Americans' rights and colonial America's constitution. Declaration of Rights and Grievances (Oct. 14, 1774) ¶5. Congress "claim[ed], demand[ed], and insist[ed] on" Americans' "indubitable rights and liberties; which cannot be legally taken from them" or "altered or abridged by any power whatever, without their own

56

consent." *Id.* ¶17.  Congress emphasized Americans' "right peaceably to assemble" and to discuss "grievances," and further emphasized that "all prosecutions, prohibit[ions]" and "commitments for the same, are illegal." *Id.* ¶14.

The wise and illustrious members of such Congress included such champions of liberty and freedom of expression as John Dickinson, John Adams, John Jay, George Washington, Patrick Henry, Samuel Adams and Roger Sherman.

John Adams and Roger Sherman served with Jefferson on the Committee of Five, composing the Declaration of Independence for the Second Continental Congress.  Samuel Adams also signed the 1776 Declaration.  George Washington also was in the Second Continental Congress until he left to lead the people actually fighting for what Congress promised and guaranteed the people in the 1776 Declaration.

The concept of the freedom of expression as the bulwark of liberty permeated Congress's 1774 and 1776 Declarations.  The 1776 Congress consisted primarily of lawyers.  The primary drafters were four lawyers (including Jefferson and Adams) and a printer-turned-statesman (Franklin).  The 1776 Declaration consisted almost entirely of their harsh criticism of public officials including King, Parliament, judges and prosecutors.  *See* Declaration of Independence (1776) ¶¶1-

57

3, 5-7, 10-12, 15, 17, 20-24, 30.  *See, esp.,* ¶17 ("mock Trial"); ¶20 ("depriving"

people of "Trial by Jury"); ¶21 (people "tried for pretended Offences"); ¶10

("obstructed the Administration of Justice").

Arguably the most famous words of any American Congress are the premise

and promise that government would be *for* the people.  Congress declared and

construed the new American constitution:  "We hold" that "all men are created

equal" and equally "endowed" with "unalienable Rights," including "the Right" to

"alter" or "abolish" any aspect or "any Form of Government" to secure their "Life,

Liberty" and "pursuit of Happiness."  *Id*. ¶2.  Moreover, when government "abuses

and usurpations" evidence "Despotism," the people have the "right" and "duty, to

throw off such Government" and "provide new Guards for their future security."

*Id*.

Consistent with the 1774 and 1776 Declarations, the "Constitution" was

written, ratified and repeatedly revised by "the People" to "establish Justice," to

"insure domestic Tranquility," to "promote the general Welfare," and to "secure

the Blessings of Liberty."  U.S. Const. Preamble.  Citizens emphasized that they

are "entitled to all Privileges and Immunities of Citizens," and (to protect

themselves and each other) they designed the Constitution and constituted federal

government to "guarantee" truly "Republican Form of Government." Art. IV.

In "Republican Government," the "censorial power is in the people over the Government, and not in the Government over the people." *New York Times*, 376 U.S. at 275 (*quoting* James Madison in Congress discussing the First Amendment). Madison's thoughts and words regarding the freedom of expression are particularly compelling because he was the primary congressional author of the Bill of Rights (after having worked with Mason on the Virginia Declaration of Rights). He also strongly defended the freedom of expression in ratification debates, and in discussion of the Sedition Act of 1798.

Madison wrote the Virginia Resolutions of 1798 attacking the Sedition Act of 1798, and then he wrote his Report of 1800 discussing the Virginia Resolutions. Madison and the Supreme Court emphasized that Americans enjoy *full* "freedom in canvassing the merits and measures of public men, of *every description*" (including judges), and they emphasized that such freedom "has not been confined" by (judges using) "the common law." *New York Times*, 376 U.S. at 275 (emphasis added). "On this" firm "foundation" the "freedom of the press" has "stood" and still "stands." *Id*.

Madison emphasized far more in his Report of 1800. *See id*. at https://press-

59

pubs.uchicago.edu/founders/tocs/amendI_speech.html (emphasis added).  When

purported public servants "may not have duly discharged" their "trust," it clearly

may be "proper" that "they should be brought into contempt or disrepute" and even

"incur the hatred of the people."  "Whether" a purported public servant's "violation

of duty" is such "as to justify a contempt, a disrepute, or hatred among the people,

can only be determined by a free examination thereof, and a free communication

among the people thereon."  "Whenever" such violations occur, "it is the duty, as

well as right, of intelligent and faithful citizens to discuss and promulge them

freely," including "to control" public servants "by the censorship of the public

opinion" and to "promote a remedy according to the rules of the Constitution."

These "great remedial rights of the people" exist "to preserve the purity or to purge

the faults of" purported public servants.  So Madison and the Virginia Assembly

(in the Virginia Resolutions of 1798) risked prosecution for seditious libel by

accusing President Adams and the members of Congress and the judges and

prosecutors responsible for enacting or enforcing the Sedition Act of 1798 of

"criminal degeneracy."  Madison and Virginia demonstrated and documented the

freedom of speech and press.

Most people responsible for writing Congress's 1774 and 1776 Declarations,

60

the Constitution and the Bill of Rights were lawyers.  Many people in Congress and state legislatures were and were expected to be lawyers.  It defies common sense to think they did not protect themselves.

Courts must protect all Americans' "privilege for criticism of official conduct." *New York Times*, 376 U.S. at 282.  "[S]uch a privilege is required by the First and Fourteenth Amendments." *Id*. at 283.  Courts must "support" the "privilege for the citizen-critic of government.  It is as much" a citizen's "duty to criticize as it is the official's duty to administer." *Id.* at 282 *citing Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, Holmes, JJ., concurring). "It is as much" a *lawyer's* "privilege" and "duty to criticize" *judicial misconduct* "as it is the" judge's "duty to administer" the law. *Id*.

Courts cannot "give public servants an unjustified preference over the public they serve" by affording "critics of official conduct" less than "a fair equivalent of the immunity granted to the officials themselves." *Id*. at 282-83.  In all relevant respects *all* "public men" are "public property," so "discussion" of their conduct "cannot be denied and the right, as well as the duty, of criticism must not be stifled." *Id*. at 268 *quoting Beauharnais v. Illinois*, 343 U.S. 250, 263-64 (1952).

Even the Sedition Act of 1798 *expressly* acknowledged critics' *right* to

61

"bring" federal officials into "contempt or disrepute" or "to excite against them" the "hatred of" the "people" if such criticism was not "false" and "malicious." *New York Times,* 376 U.S. at 273 quoting the Sedition Act of 1798.

Clearly, the government was required to prove all facts material to either element. *Id.* Moreover, the "defense of truth" was "allowed." *Id.* at 274. Now, however, judges pretend that they have the power to deprive lawyers of their liberty and license to practice law—and their ability to earn a living and their reputation and standing—without anyone proving either falsity or malice and despite evidence that criticism was truthful.

The Sedition Act *clearly* countenanced *severe* criticism of federal judges. *See id.* at 273 ("against the government"). Moreover, it expressly required "the jury" (the *people*) to be the "judges both of the law and the facts." *Id.* at 274. That last point is of profound historical importance regarding so-called seditious libel as the *Zenger* jury and many others proved.

Jury nullification of the vicious judge-made "common law" of seditious libel was perfectly consistent with the founding "premise" of America, *i.e.*, that "the Constitution created a form of government under which '*The people, not the government, possess the absolute sovereignty*.' The *structure of the government*

62

dispersed power in *reflection of the people's distrust* of concentrated power, and of *power itself at all levels*." *Id.* (emphasis added) quoting Madison, Report of 1800. The Constitution expressly secured the people's power to stop seditious libel prosecutions. *See* U.S. Const. Amends. V, VI (expressly reserving vital powers to juries, attorneys, defendants, witnesses).

## CONCLUSION

This Court must acknowledge the extreme illegality of retaliating against Jordan for his speech/petitions.

Dated:  May 8, 2023                    Respectfully submitted,
                                       /s/ Jack Jordan
                                       3102 Howell Street
                                       North Kansas City, MO 64116
                                       jack.jordan@emobilawyer.com
                                       816-853-1142
                                       *Respondent*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed.R.App.P. 28(e)(2)(A) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), this document contains 12,996 words.

This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this

63

document has been prepared in a proportionally spaced typeface using Microsoft

Word in Microsoft 365 in Times New Roman, 14 point font.

Dated:  May 8, 2023                        /s/ Jack Jordan

## CERTIFICATE OF SERVICE

I certify that on May 8, 2023, I caused a true copy of Respondent's Brief and

Application in the above entitled matter to be served by electronic mail to the

following counsel (who represent the DOJ in Appeal No. No. 22-5289):

Brian Hudak, Chief, Civil Division, brian.hudak@usdoj.gov,
R. Craig Lawrence, Appellate Counsel, craig.lawrence@usdoj.gov
Sian Jones, Assistant U.S. Attorney, Sian.Jones@usdoj.gov
Office of the U.S. Attorney, District of Columbia
U.S. Department of Justice
Washington, DC

/s/ Jack Jordan
3102 Howell Street
North Kansas City, MO 64116
jack.jordan@emobilawyer.com
816-853-1142

64

# ADDENDUM

**28 U.S.C. § 2071(a)** The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title [28 USCS § 2072].

**28 U.S.C. § 2072(a), (b):**
**(a)** The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrates [magistrate judges] thereof) and courts of appeals.

**(b)** Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

**28 U.S.C. § 2074(b)** Any such rule creating, abolishing, or modifying an evidentiary privilege shall have no force or effect unless approved by Act of Congress.

**Kan. Const. Art. 2 §1:**
The legislative power of this state shall be vested in a house of representatives and senate.

**Kan. Const. Art. 2 §17:**
All laws of a general nature shall have a uniform operation throughout the state: Provided, The legislature may designate areas in counties that have become urban in character as "urban areas" and enact special laws giving to any one or more of such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper.

**Kan. Const. B. of R. §2:**
All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the legislature, which may

1

not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency.

**Kan. Stat. Ann. § 60-243(a), (b):**
**(a) Form and admissibility.**
At trial, the witness' testimony must be taken in open court, unless otherwise provided by law.

For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

**(b) Scope of examination and cross-examination.**
A party may examine any unwilling or hostile witness by leading questions.
A party may call an adverse party or an officer, director or managing agent of a public or private corporation, a partnership or an association that is an adverse party, may examine the witness by leading questions and may contradict and impeach the witness as if the witness had been called by the adverse party.
The witness may be contradicted and impeached by the adverse party, but may be cross-examined only on the subject matter of the witness' direct examination.

**Kan. Stat. Ann. § 60-401 (potentially relevant definitions):**
As used in this article unless the context otherwise requires:

**(a)** "Evidence" is the means from which inferences may be drawn as a basis of proof in duly constituted judicial or fact-finding tribunals, and includes testimony in the form of opinion, and hearsay.

**(b)** "Relevant evidence" means evidence having any tendency in reason to prove any material fact.

**(c)** "Proof" is all of the evidence before the trier of the fact relevant to a fact in issue which tends to prove the existence or non-existence of such fact.

**(d)** "Burden of proof" means the obligation of a party to meet the requirements of a rule of law that the fact be proven either by a preponderance of the evidence or by clear and convincing evidence or beyond a reasonable doubt, as the case may be.

2

Burden of proof is synonymous with "burden of persuasion."

(f) "Conduct" includes all active and passive behavior, both verbal and nonverbal.

(h) "Finding of fact" means the determination from proof or judicial notice of the existence of a fact as a basis for a ruling on evidence. A ruling implies a supporting finding of fact.

**Kan. Stat. Ann. § 60-419:**
As a prerequisite for the testimony of a witness on a relevant or material matter, there must be evidence that he or she has personal knowledge thereof, or experience, training or education if such be required. Such evidence may be by the testimony of the witness himself or herself. The judge may reject the testimony of a witness that the witness perceived a matter if the judge finds that no trier of fact could reasonably believe that the witness did perceive the matter. The judge may receive conditionally the testimony of the witness as to a relevant or material matter, subject to the evidence of knowledge, experience, training or education being later supplied in the course of the trial.

**Kan. Stat. Ann. § 60-420:**
Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility.

**Kan. Stat. Ann. § 60-460(o), (r), (s), (t):**
Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except . . .

**(o) Content of official record**. Subject to K.S.A. 60-461, and amendments thereto: (1) If meeting the requirements of authentication under K.S.A. 60-465, and amendments thereto, to prove the content of the record, a writing purporting to be a copy of an official record or of an entry therein; (2) to prove the absence of a record in a specified office, a writing made by the official custodian of the official records of the office, reciting diligent search and failure to find such record; or (3) to prove the absence of a record in the criminal justice information system central

3

repository maintained by the Kansas bureau of investigation pursuant to K.S.A. 22-4705, and amendments thereto, a writing made by a person purporting to be an official custodian of the records of the Kansas bureau of investigation, reciting diligent search of criminal history record information and electronically stored information, as defined in K.S.A. 22-4701, and amendments thereto, and failure to find such record.

**(r) Judgment of previous conviction**. Evidence of a final judgment adjudging a person guilty of a felony, to prove any fact essential to sustain the judgment.

**(s) Judgment against persons entitled to indemnity**. To prove the wrong of the adverse party and the amount of damages sustained by the judgment creditor, evidence of a final judgment if offered by a judgment debtor in an action in which the debtor seeks to recover partial or total indemnity or exoneration for money paid or liability incurred by the debtor because of the judgment, provided the judge finds that the judgment was rendered for damages sustained by the judgment creditor as a result of the wrong of the adverse party to the present action.

**(t) Judgment determining public interest in land**. To prove any fact which was essential to the judgment, evidence of a final judgment determining the interest or lack of interest of the public or of a state or nation or governmental division thereof in land, if offered by a party in an action in which any such fact or such interest or lack of interest is a material matter.

**U.S. Constitution, Amendment 1:**
Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**U.S. Constitution, Amendment V:**
No person shall be . . . compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**U.S. Constitution, Amendment X:**
The powers not delegated to the United States by the Constitution, nor prohibited

by it to the States, are reserved to the States respectively, or to the people.

**U.S. Constitution, Amendment XIV, §1:**
All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**U.S. Constitution, Art. III §1:**
The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

**U.S. Constitution, Art. III §2, cl. 1:**
The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority. . . to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State,—between Citizens of different States. . . .

**U.S. Constitution, Art. IV §2, cl. 1:**
The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

**U.S. Constitution, Art. VI §2, cls. 2, 3:**
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The Senators and Representatives before mentioned, and the Members of the

several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.